WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**(NOT FOR PUBLICATION)**

| | |
|---|---|
| Samuel Knox, | |
|     Plaintiff, | No. CIV 07-0297-PHX-DKD |
| vs. | |
| United Rentals Highway Technologies, Inc., | **ORDER** |
|     Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. #60). Plaintiff Samuel Knox brings this action against Defendant United Rentals Highway Technologies, Inc. ("United Rentals") claiming wrongful termination under the Arizona Employment Protection Act (AEPA) and the intentional infliction of emotional distress (IIED). This action was removed from Maricopa County Superior Court to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1441(a). Knox has filed a response to this motion (Doc. #63) and United Rentals has filed a reply (Doc. #66). For the reasons stated below, the Court finds there is no genuine issue of material fact, and that United Rentals is entitled to judgment as a matter of law. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

**BACKGROUND**

Knox has worked in the construction industry since the 1980's. (Doc. #61, ¶1). United Rentals hired Knox as a superintendent on August 9, 1999. (Doc. #61, ¶11). Knox was

1 responsible for managing a crew of workers on striping jobs as well as ensuring the safety of
2 his crew. (*Id.*). In May 2003, Knox was burned with thermoplastic while working on a job for
3 United Rentals. (Doc. #61, ¶12). After the accident, Knox received workers' compensation and
4 was prescribed several pain medications, including Morphine, Percocet, Vicodin and Demerol.
5 (Doc. #61, ¶13-¶14). Knox also received medical treatment for depression resulting from his
6 burns. (Doc. #61, ¶15). When Knox returned to work he was placed on a full-time project even
7 though his doctors said he could only return to light duty. (PSOF, ¶103-04).

During the weekend of July 14-15, 2006, Knox and his crew performed striping in Maricopa County, Arizona on the eastbound and westbound Loop 202 and some freeway ramps as part of the Arizona Department of Transportation (ADOT) Quiet Ride Project. (Doc. #61, ¶25-26). ADOT approved all traffic control for the project, which consisted of crash trucks and DPS vehicles. (Doc. #61, ¶28). Knox believed he needed more traffic control and thought that one or two lanes should have been closed off with barricades. (Doc. #61, ¶34). Knox called Operations Manager Ken Williams and told him he thought the job was unsafe but not that it was illegal. (Doc. #61, ¶32). At no time during the conversation did Mr. Williams tell Knox that he would be fired, demoted, suspended, or disciplined if he did not perform the Quiet Ride job. (Doc. #61, ¶33). Knox had never been disciplined for making a safety complaint. (Doc. #61, ¶40). Knox finished the Quiet Ride Project using a "rolling closure" method, with the DPS vehicles and a crash truck following behind the striping truck. (Doc. #61, ¶35). If striping was performed at night or on the weekends, ADOT permitted the use of rolling closures. (Doc. #61, ¶36). There is no Arizona law prohibiting the use of rolling closures, and rolling closures are used on a regular basis to perform striping. (Doc. #61, ¶47). Knox testified that he did not know if barricades or lane closures were required by law for the Quiet Ride Project, but he did believe the project to be unsafe. (Doc. #61, ¶50). Knox did not call another member of United Rentals management until July 16, 2006, after the project was done, to discuss his safety concerns. (Doc. #61, ¶53).

On July 16, Knox contacted Branch Manager Rodd Jose at home and said he was upset about the July 14-15 Quiet Ride Project because there were no lane closures. (Doc. #61, ¶54). When Knox made the call he may have been drinking and very well could have been on pain medication. (Doc. #61, ¶58). Knox told Jose that he would not put himself in a situation he felt was unsafe again. (Doc. #61, ¶54). Both Knox and Jose were very upset during the conversation, and a shouting match eventually occurred. (Doc. #61, ¶56). Jose believed that Knox resigned during the telephone call, but Knox denies that he did so. (Doc. #61, ¶57). Afterwards, Knox called Superintendent Mike Flore and left a message stating that he would not be at work the next day because he would be taking care of legal matters. (Doc. #61, ¶60). Knox then called in sick to work so he could take care of legal matters. (Doc. #61, ¶61).

On Monday, July 17, 2006, Jose called Knox to arrange a meeting. (Doc. #61, ¶63). At no time during the conversation did Mr. Jose terminate Knox's employment; Mr. Jose told Knox to come to work the next day so they could discuss what happened over the weekend. (Doc. #61, ¶64). Knox refused and then stated that he had not resigned the night before. (PSOF, ¶121). On July 18, Knox arrived at the United Rentals office with his wife and his attorney to meet with Jose. Cindy Peterson from United Rentals' Human Resources department was also present for the meeting. (Doc. #61, ¶65). Knox requested that his attorney and wife be present during any meeting, but Jose and Peterson informed him that company policy prohibited his wife or attorney from being present during meetings involving personnel issues. (Doc. #61, ¶65). Knox refused multiple times to meet with Jose and Peterson without his attorney present and was subsequently suspended with pay. (Doc. #61, ¶66). Jose and Peterson then asked Knox to leave his company property, which Knox did, without incident. (*Id*). Knox was not embarrassed, humiliated, or ashamed. (Doc. #61, ¶73). No one at United Rentals ever told Knox he had been fired for making a safety complaint. (Doc. #61, ¶67).

After July 18, 2006, United Rentals requested that Knox return to work several times, but his attorney responded that Knox would not meet with management without his attorney present because Knox believed United Rentals had fired him. (Doc. #61, ¶69). United Rentals

- 3 -

terminated Knox after he continued to refuse to meet with management regarding his safety concerns, for starting the project at an inappropriate time, due to failure to report his concerns in a timely manner, for using hostile language in a conversation to Jose, and for displaying a negative attitude. (Doc. #61, ¶70). Knox believes he was terminated on July 18, 2006 for making a safety complaint because on that date he was asked to turn in his company property. (Doc. #61, ¶72).

In September 2007, Knox sought psychological treatment from Dr. Erika Neuberg who testified in her deposition that the potential causes of Knox's depressive disorder were multifaceted. (Doc. #61, ¶90). She also stated that she was unable to determine whether the loss of Knox's job from United Rentals in 2006 was the cause of his Post Traumatic Stress Disorder because his depression and anxiety are an accumulation of several factors, including the deaths in his family, the burns he received in 2003, his termination, and his arrest in 2007. (Doc. #61, ¶94). In January 2008, Dr. Michael Carlton diagnosed Knox with Post Traumatic Stress Disorder. (Doc. #61, ¶86). Dr. Carlton did not form an opinion as to whether this disorder resulted from Knox's termination from United Rentals in 2006. (Doc. #61, ¶87).

## SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings and supporting documents show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex* at 322-24. The disputed facts must be material such that they "might affect the outcome of the suit under governing law." *Id.* at 322-23. Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The primary purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 447 U.S. at 323-24. The party opposing summary judgment "may not rely merely on allegations or denials in its own pleadings; rather, its response must...

- 4 -

set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita* at 586. If the evidence is merely colorable or does not afford proof or evidence, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## DISCUSSION

**A.    KNOX'S WRONGFUL TERMINATION CLAIM**

<u>Applicable Statute</u>

The Court initially notes that Knox's wrongful termination claim arises under A.R.S. § 23-1501(3)(c)(ii) of the Arizona Employment Protection Act and not section 1501(3)(b) of the statute.[1] When considering the effect of two related statutory provisions, we construe and

---

[1] § 23-1501. **Severability of employment relationships; protection from retaliatory discharges; exclusivity of statutory remedies in employment.**

The public policy of this state is that:
\*\*\*
3.  An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:
    \*\*\*
    (b)    The employer has terminated the employment relationship of an employee in violation of a statute of this state. If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy set forth in or arising out of the statute, including the following:
        \*\*\*
        (ii)    The occupational safety and health act prescribed in chapter 2, article 10 of this title.
        \*\*\*
    (c)    The employer has terminated the employment relationship of an employee in retaliation for any of the following:
        \*\*\*
        (ii)    The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution

- 5 -

1 interpret them, whenever possible, in a way that gives effect to both. *Walters v. Maricopa County*, 990 P.2d 677, 682 (Ariz. Ct. App. 1999). Section 1501(3)(b) does not specifically apply to a whistle-blowing situation; section 1501(3)(c)(ii) allows an employee who is discharged to file a civil action where *whistle-blowing is alleged*. *Id.* (emphasis added).

If section 1501(3)(b) were interpreted as barring a wrongful termination claim alleging whistle-blowing, it would conflict with section 1501(3)(c)(ii) and render it ineffective. In *Walters*, the Court held that an employee could bring a claim under section 1501(3)(c)(ii) even though another statute provided a remedy. *Id.* The other statute in *Walters* provided that "a former employee may make a complaint." *Id.* at 680. The Court found this remedy to be permissive as opposed to mandatory. *Id.* at 682. It reasoned that the remedy provided for in the statute was permissive, so it left open the opportunity for an employee to file a complaint under section 1501(3)(c)(ii).

In this case, United Rentals claims that the Arizona Occupational Safety and Health Act (AOSHA) provides the exclusive remedy for Knox. Like the statute in *Walters*, AOSHA provides that an employee "may . . . file a complaint." A.R.S. § 23-425. The language suggests a permissive remedy, not a mandatory one. Furthermore, if AOSHA were to be interpreted as taking away the right to file a wrongful termination claim where whistle-blowing was involved it would directly conflict with section 1501(3)(c)(ii). Applying AOSHA would render that section ineffective. The Court will apply section 1501(3)(c)(ii) in this case of alleged whistle-blowing.

---

of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

Knox's Complaint under the AEPA

The AEPA provides a claim for wrongful termination against an employer where the employer has terminated the employment relationship in retaliation for the disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer has violated, is violating, or will violate the Constitution of Arizona, or the statutes of Arizona, to the employer or the employer's representative. A.R.S. § 23-1501(3)(c)(ii). To prove retaliation, Knox must show that (1) he engaged in a protected activity; (2) United Rentals subjected him to an adverse employment decision; and (3) there exists a causal link between the protected activity and the adverse employment decision. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Knox cannot establish a claim for wrongful termination against United Rentals under the AEPA.

Knox did not reasonably believe that United Rentals had violated an Arizona law. A reasonable belief that a law was violated is sufficient to bring a claim under the whistle-blower statute. *See* A.R.S. § 23-1501(3)(c)(ii). Knox testified that he did not know if the lack of barricades and lane closures on the freeway was a violation of any law; he just believed the project to be unsafe. In fact, there is no Arizona statute requiring the use of barricades for work performed on a freeway. To the contrary, the record in this case shows that ADOT often approves the type of traffic control used during the Quiet Ride Project. In any event, Knox's testimony is enough to prove that he did not reasonably believe an Arizona law had been violated. Furthermore, Knox did not disclose his safety concern in a reasonable manner. He made no safety complaint to ADOT or United Rentals while performing the job. He first complained to his branch manager after the job was done, during a telephone call in which Knox testified that he had been drinking and was possibly on pain medication. Afterwards, he refused to participate in any investigation into his safety complaint. Therefore, Knox did not disclose in a reasonable manner a reasonable belief that United Rentals had violated Arizona law.

Even if Knox had a reasonable belief that United Rentals had violated Arizona law, his wrongful termination claim would still fail, because he has produced no evidence of retaliation.

- 7 -

Assuming Knox engaged in a protected activity when he notified Jose about his safety concerns and that at some point United Rentals subjected Knox to an adverse employment decision, retaliation is only present where an employee is subjected to an adverse employment decision because he engaged in a protected activity. *Ray v. Henderson.* To prove this "causal link" the employee must show that the employer's "retaliatory motive played a part in the employment action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 798 (9th Cir. 1982). A mere "coincidence in timing" is not sufficient to establish a case of retaliatory discharge. *Kipp v. Missouri Highway and Transp. Com'n*, 280 F.3d 893, 897 (8th Cir. 2002).

Knox cannot prove that his protected activity was the reason United Rentals terminated him. United Rentals attempted to meet with Knox after he made his safety complaint on July 18, 2006. Knox refused to meet with Jose and Peterson and was suspended with pay. Knox admitted that neither Jose nor Peterson told him he was terminated. Furthermore, he admitted that no one ever told him he was terminated for making a complaint. United Rentals attempted to meet with Knox several times over the next two weeks to discuss his safety complaint, but Knox refused to meet, claiming he had been terminated because he was forced to turn in company property. Knox has not explained why United Rentals would attempt to meet with him, or pay him, if they had already fired him. On July 31, United Rentals terminated Knox because he never returned to work. In addition, United Rentals determined that Knox had started the Quiet Ride Project at an inappropriate time and failed to timely report the conditions he felt were unsafe. Therefore, United Rentals had legitimate, non-retaliatory reasons for terminating Knox.

The employer's articulation of non-retaliatory reasons shifts the burden back to the employee to show that the employer's reasons were a pretext for retaliation. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). Evidence of pretense must be specific and substantial to create a triable issue in regards to discrimination. *Id.* at 1222. Furthermore, courts only require that an employer honestly believe its reason for its actions, even if the reasons are "foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

1054 (9th Cir. 2002) (citation omitted). In *Villiarimo*, the Court affirmed summary judgment because the plaintiff presented no evidence that her employer did not honestly believe its proffered reasons for her discipline. *Id.* In this case, Knox has offered no evidence except his subjective belief that he was terminated for making a safety complaint. He has provided nothing to suggest that United Rentals did not honestly believe its legitimate, non-retaliatory reasons for terminating him. At most, there is a mere coincidence in timing, which is not enough to sustain a claim for retaliation. Knox has set out no specific facts that show a genuine issue for trial. Therefore, Knox fails on his claim for wrongful termination under the AEPA.

**B.     KNOX'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Under Arizona law, a cause of action for intentional infliction of emotional distress requires that the (1) conduct by the defendant must be 'extreme' and 'outrageous'; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (3) severe emotional distress must indeed occur as a result of defendant's conduct. *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999). The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury. *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). In this case, the Court finds that Knox has failed to establish such a claim. United Rentals' conduct was not sufficiently "extreme" and "outrageous", did not intend or recklessly disregard the near certainty of such distress, and did not cause any of the severe emotional distress that Knox suffered.

To demonstrate extreme and outrageous conduct, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (citation omitted). As recognized by the *Mintz* court "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness

- 9 -

necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quotation omitted). In *Mintz*, the plaintiff was hospitalized for severe emotional and psychological problems after failing to receive an expected promotion. *Id*. at 561. She began receiving disability payments, but after three months her employer stopped these payments and directed her to return to work. *Id.* After one day of work she was hospitalized again. *Id*. She was hand-delivered a termination letter in the hospital despite her fragile condition. *Id*. The Court held that even these facts, while callous and insensitive, were not sufficiently outrageous to state a claim for intentional infliction of emotional distress. *Id*. at 563.

Knox argues that he was let go for reporting safety violations. Knox contends that this termination was a culmination of three years of outrageous conduct on the part of United Rentals. However, Knox provides no evidence to support his assertion that his supervisor made belittling comments to him or that he was treated differently for refusing to sign a non-compete agreement. Even if Knox could produce evidence of such comments it is doubtful, based on *Mintz*, that it could rise to the level of extreme and outrageous conduct. Although the actions on the part of United Rentals on and after July 18 may seem callous to some, its behavior was not so outrageous, as defined by Arizona law, as to allow a jury to consider Knox's claim for intentional infliction of emotional distress.

Furthermore, United Rentals must have intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from its conduct. *Johnson v. McDonald*. The facts of this case do not suggest that United Rentals intended to cause emotional distress, even when viewed in the light most favorable to Knox. According to Mr. Knox, United Rentals terminated him because he reported a safety violation. If this were true, United Rentals did not intend to cause emotional distress, but to cover up a safety violation. The facts of this case also do not suggest that United Rentals recklessly disregarded the near certainty that emotional distress would result from its termination of Knox. United Rentals had no actual knowledge that Knox was emotionally distraught. Knox has produced no evidence

to suggest a "near certainty" that terminating Mr. Knox would lead to emotional distress. Therefore, Knox fails to establish another element of his claim.

Finally, it is not clear from this record that Knox suffered the required severe emotional distress as a result of United Rentals' conduct. Knox sought treatment for depression, anxiety, mood swings, and insomnia years before United Rentals terminated him. Although he was upset when he believed he was terminated, Knox testified that he did not feel embarrassed or humiliated. Unfortunately, Knox has suffered through events which have caused emotional distress: his severe burns in 2003 and his mother's death. However, these events are not related to his termination by United Rentals in 2006. Knox has failed to establish the third element of his claim, because he has provided no causal connection between his emotional distress and United Rentals' conduct.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** (Doc. #60). The Clerk shall enter judgment in favor of Defendant.

DATED this 26th day of March, 2009.

David K. Duncan
United States Magistrate Judge